■ In the Matter of JAMES L., a Person Alleged to be a Juvenile Delinquent.—Order unanimously reversed on the law without costs and matter remitted to Erie County Family Court for further proceedings, in accordance with the following memorandum: In this juvenile delinquency proceeding, respondent was found guilty of acts which, if committed by an adult, would constitute the crime of criminal mischief in the fourth degree. It was error for the court to allow the com-

plainant's son to interpret for her without first determining the need for appointment of an interested person, inquiring into the extent of his bias, ascertaining the son's qualification to translate, and admonishing him to translate exactly what the primary witness had said. An interpreter should be one who has no bias or interest in the outcome of a case *(see, Commonwealth v Kozec,* 21 Mass App 355, 487 NE2d 216, 223 [1985], *affd* 399 Mass 514, 505 NE2d 519; *State in Interest of R. R.,* 79 NJ 97, 398 A2d 76, 86 [1979]; *People v Allen,* 22 Ill App 2d 800, 317 NE2d 633, 635 [1974]; *Kley v Abell,* 483 SW2d 625, 628-629 [Mo App 1972]; *Prince v Beto,* 426 F2d 875, 876-877 [5th Cir 1970]; *see generally,* Annotation, *Disqualification, for Bias, of One Offered as Interpreter of Testimony,* 6 ALR4th 158). "This is so because the danger that a primary witness' message will be distorted through interpretation is compounded when the interpreter is biased one way or the other" *(State in Interest of R. R., supra,* 79 NJ, at 118, 398 A2d, at 86). Thus, it has been termed the better practice to avoid appointing a friend or relative of a party or witness as interpreter *(see generally,* Annotation, 6 ALR4th 158, 164-166). Many cases recognize that it sometimes may be necessary to appoint an interested interpreter, for example, where no competent disinterested interpreter is available *(see generally,* Annotation, 6 ALR4th 158, 166-167). "Courts have agreed, however, that such an interested person should not be utilized unless and until the trial judge is satisfied that no disinterested person is available who can adequately translate the primary witness' testimony" *State in Interest of R. R., supra* 79 NJ, at 118, 398 A2d, at 86, *see also, People v Allen, supra; Kley v Abell, supra).* Even where the court permissibly appoints an interested interpreter, the Trial Judge must interrogate him in order to gauge the extent of his bias and admonish him that he must translate exactly what the primary witness has said *(see, State in Interest of R. R., supra).*

Here, the court did not inquire whether a disinterested interpreter was available, and, indeed, the record does not even reveal the language spoken by the witness. The record also demonstrates that the court failed to question the complainant's son to ascertain the extent of his bias. In the absence of such inquiry, we must presume that the translator wanted to see respondent punished for damaging the complainant's car *(see, Prince v Beto, supra; cf., State in Interest of R. R., supra,* 398 A2d, at 87). Whether that influenced his translation, either consciously or subconsciously, is a risk that should not have been taken unless it was absolutely necessary

*(see, Prince v Beto, supra).* Finally, the court failed to instruct the interpreter to transmit exactly what his mother had said. From the nature of the testimony, including the repeated use of the third person, it is clear that the interpreter largely paraphrased the testimony of the witness. Thus, there is a danger that he may have supplied details omitted by the witness in order to fit his recollection of her prior statements or that, unbeknownst to the court, he may have prompted the witness by paraphrasing questions. Finally, the order must be reversed for the court's failure to ascertain the qualifications of the interpreter, particularly his grasp of English, and also for its failure to follow the mandate of Judiciary Law § 387, which requires that, upon being appointed to act in a given case, a temporary interpreter shall "file with the clerk of the court the constitutional oath of office." (Appeal from order of Erie County Family Court, Honan, J.—juvenile delinquency.) Present—Doerr, J. P., Denman, Green, Pine and Lawton, JJ.